[No. B115300. Second Dist., Div. Seven. Nov. 30, 1998.]

JACK M. JANIS et al., Plaintiffs and Appellants, v.
CALIFORNIA STATE LOTTERY COMMISSION et al., Defendants and
Respondents.

## COUNSEL

Wasserman, Comden & Casselman, Clifford H. Pearson, Gary S. Soter; Girardi & Keese, Thomas V. Girardi and James B. Kropff for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Linda A. Cabatic, Assistant Attorney General, Paul H. Dobson and Ramon M. de la Guardia, Deputy Attorneys General, for Defendant and Respondent California State Lottery Commission.

Landels, Ripley & Diamond, Mathew J. Geyer, Gregory L. Germain; Williams & Connolly, David Povich and William R. Murray, Jr., for Defendant and Respondent GTECH Corporation.

## OPINION

**LILLIE, P. J.**—Jack and Linda Janis (Janis) appeal judgments dismissing their class action against the California State Lottery Commission (CSL) and GTECH Corporation (GTECH). Janis sought to recover moneys lost by Keno players during the four years CSL operated the lottery "Keno" game. The issues on appeal are whether: (1) Janis's appeal of the judgment in favor of GTECH is timely; (2) CSL is immune from liability on Janis's contract rescission and restitution claims; (3) Janis may assert a civil action for misleading advertising and fraud against CSL; (4) Janis properly filed an "amended government claim"; and (5) Janis is entitled to an accounting.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1992, CSL began operating a Keno game. Several private gaming interests immediately challenged the legality of Keno, seeking to have its operation enjoined and the game declared illegal. During the litigation, CSL continued to operate Keno. The trial court and the Court of Appeal upheld the legality of Keno. On June 24, 1996, however, the California Supreme Court ruled the Keno game constituted illegal gambling. CSL stopped operating Keno later that day.

On June 25, 1996, Janis filed an administrative claim with State Board of Control (BOC). Janis purported to represent a class of individuals who played CSL's Keno. Janis sought the return of all funds wagered on Keno, arguing CSL unlawfully promoted and profited from the illegal game. In mid-July 1996, the BOC notified Janis the administrative claims were

incomplete and requested additional information. Janis did not respond to BOC's request.

In mid-September 1996, Janis filed the instant class action against CSL, and GTECH.[1] In the complaint, Janis asserted two causes of action for "Restitution and Unjust Enrichment" and "Unfair Business Practices and Misleading Advertising."

In January 1997, GTECH filed a motion for summary judgment and CSL filed a demurrer to the complaint. GTECH argued, among other things, Janis's claims lacked merit because Keno was lawful until it was declared illegal by the Supreme Court. In any event, GTECH asserted, Janis could not recover the funds lost in illegal gambling.

On February 2, 1997, the court granted GTECH's summary judgment motion and CSL's demurrer with leave to amend. On February 24, 1997, the court entered judgment for GTECH.

On March 5, 1997, Janis filed a "First Amended Complaint" against CSL and GTECH. In the amended complaint, Janis: (1) reasserted the original causes of action and added language to each concerning a violation of Government Code sections 8880.63 and 8880.4, subdivision (a)(2); and (2) asserted *new* claims against CSL for an accounting, CSL's alleged failure to return 50 percent of the Keno proceeds to the public in the form of prize money, and CSL's violation of statutes governing false and misleading advertising. Janis also expanded the class to include innocent spouses of Keno players. Thereafter, on March 10, 1997, Janis filed an "Amended Government Claim" with BOC. The amended claim contained the *new* claims asserted in the First Amended Complaint.

In May 1997, GTECH filed a motion to strike the allegations against it. CSL sought a demurrer without leave to amend. On July 3, 1997, the court granted both motions and on August 14, 1997, entered judgment. On August 27, 1997, Janis filed a notice of appeal of the August 14, 1997, judgment and the February 24, 1997, judgment.

## I

### JANIS'S CLAIMS AGAINST GTECH

A. *Janis's Appeal From the Judgment for GTECH Is Untimely.*

■ California Rules of Court, rule 2(a) requires the filing of an appeal no later than 60 days after service of the notice of entry of judgment. Timely

---

[1]GTECH created the computer systems for CSL to operate the Keno game.

filing of an appeal is an absolute prerequisite to the exercise of appellate jurisdiction; once the deadline expires, we have no power to entertain the appeal. (*Van Beurden Ins. Services, Inc.* v. *Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 [61 Cal.Rptr.2d 166, 931 P.2d 344].)[2]

Janis failed to comply with appellate time standards in California Rules of Court, rule 2. Janis was served with notice of entry of judgment on the summary judgment in February 1997. Nonetheless, Janis did not file an appeal until August 1997. Consequently, Janis cannot challenge the entry of summary judgment in favor of GTECH.

## B. *The Court Properly Granted GTECH's Motion to Strike.*

At the end of the hearing on GTECH's motion for summary judgment, Janis requested leave to amend the complaint to assert a claim against GTECH for violation of the California State Lottery Act (the Lottery Act), Government Code section 8880.63, for GTECH's failure to ensure the return of 50 percent of the Keno proceeds to the public in the form of prize money. The court responded Janis was free to assert a "new" action against GTECH, but also cautioned: "You [Janis] can't amend to add [any new claim] back in on any of the theories that have been sustained today."

■ "A trial court has authority to strike sham pleadings, or those not filed in conformity with its prior ruling." (*Ricard* v. *Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel* (1992) 6 Cal.App.4th 157, 162 [8 Cal.Rptr.2d 139].)

Here, in the First Amended Complaint Janis reasserted the original causes of action against GTECH and merely appended a sentence to each concerning an alleged violation of the Lottery Act. Thus, Janis failed to comply with the court's ruling. Consequently, the court properly granted GTECH's motion to strike the First Amended Complaint.[3]

## II

## JANIS'S CLAIMS AGAINST CSL

## A. *CSL Is Immune From Liability on Janis's "Contract" Action.*

■ Janis's cause of action for "Rescission of Contract/Restitution and Unjust Enrichment" alleges CSL misrepresented the legality of the Keno,

---

[2]While the time for appeal may be extended by the timely filing of a notice of intention to move for a new trial and/or for entry of a judgment notwithstanding the verdict, Janis did not file any such notice.

[3]In view of this conclusion, we do not reach the merits of Janis's appeal concerning GTECH's alleged Lottery Act violations.

and therefore, Keno players were entitled to rescind their contracts with CSL to obtain restitution of moneys wagered on the game.

On appeal, CSL characterizes this as a tort claim, not a contract action. CSL argues governmental immunity statutes shield it from civil liability in such tort actions. We agree.

The California Tort Claims Act sets forth the statutory scheme relating to contract and tort liabilities of public entities. Government Code section 815, provides in pertinent part: "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Also relevant, Government Code section 818.8 specifically immunizes public entities for injuries caused by governmental entities intentional or negligent misrepresentations. These statutes notwithstanding, governmental entities do not enjoy immunity from liability for contract claims. (Gov. Code, § 814.)

Whether a governmental tort immunity applies does not depend on the form of the pleading, or relief sought. Instead, we examine the nature of the right sued upon; if based on a breach of promise it is contractual; if based on a noncontractual duty it is tortious. (*Arthur L. Sachs, Inc.* v. *City of Oceanside* (1984) 151 Cal.App.3d 315, 322 [198 Cal.Rptr. 483].)

The nature of Janis's "Rescission of Contract/Restitution and Unjust Enrichment" claim is tortious. First, Janis's claim centers on the allegation CSL "misled" Keno players concerning the legality of the game and players relied on such misrepresentations in playing the game. Irrespective of how packaged in the complaint, this is a fraud claim, not a breach of contract claim.

Second, as a matter of law, playing Keno does not create an express contract between CSL and the player. (*Brown* v. *California State Lottery Com.* (1991) 232 Cal.App.3d 1335, 1339 [284 Cal.Rptr. 108] [no contract exists between lottery bettors and the state lottery].) Likewise, generally a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations. (*Los Angeles Equestrian Center, Inc.* v. *City of Los Angeles* (1993) 17 Cal.App.4th 432, 447 [21 Cal.Rptr.2d 313].) Here, then, Janis cannot point to a contractual promise to support this claim.

Accordingly, because Janis's first cause of action is based on tort rather than contract, CSL is immune from liability.[4]

**B.** *Janis's Causes of Action Under the Unfair Practices Act and the Lottery Act Fail.*

Janis asserts CSL's operation and promotion of Keno constituted unfair business practices in violation of Business and Professions Code sections 17200 and 17500 of the Unfair Practices Act and Government Code section 8880.24 of the Lottery Act. Specifically, Janis alleges CSL misled the public by advertising Keno as a "legal" game.

As set forth below, Janis cannot maintain a civil action against CSL under either statutory scheme.

*CSL Is Not a "Person" Under the Unfair Practices Act.*

■ The Unfair Practices Act applies to specific "persons": "the term person shall mean and include all natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." (Bus. & Prof. Code, § 17201; see Bus. & Prof. Code, § 17506.) Government entities, such as CSL, are not included in this definition of person. (*Community Memorial Hospital* v. *County of Ventura* (1996) 50 Cal.App.4th 199, 209 [56 Cal.Rptr.2d 732]; see also *Santa Monica Rent Control Bd.* v. *Bluvshtein* (1991) 230 Cal.App.3d 308, 318 [281 Cal.Rptr. 298].) Consequently, Janis's unfair business practices and misleading advertising claim under Business and Professions Code sections 17200 and 17500 fails as a matter of law.

*Janis Cannot Assert an Action for False Advertising Under the Lottery Act.*

■ Janis claims CSL breached a mandatory duty under the Lottery Act, Government Code section 8880.24, to refrain from false advertising.

Government Code section 8880.24 describes the powers of the state lottery commission: "The Commission shall exercise all powers necessary to effectuate the purposes of this chapter. In all decisions, the Commission shall take into account the particularly sensitive nature of the California

---

[4]In view of this conclusion, we do not reach the merits of the issue decided by the trial court, i.e., whether Janis can recover the moneys wagered on an illegal lottery game. (*California State Electronics Assn.* v. *Zeos Internat. Ltd.* (1996) 41 Cal.App.4th 1270, 1275 [49 Cal.Rptr.2d 127] [we affirm if result legally correct, without regard for the lower court's rationale].)

State Lottery and shall act to promote and ensure integrity, security, honesty, and fairness in the operation and administration of the Lottery. In decisions relating to the advertising and promotion of the Lottery, the Commission shall ensure that the Lottery complies with both the letter and spirit of the laws governing false and misleading advertising, including Section 17500 et seq. of the Business and Professions Code."

A public entity is liable for injuries caused by its failure to discharge a mandatory duty imposed by statute. (Gov. Code, § 815.6; *Creason* v. *Department of Health Services* (1998) 18 Cal.4th 623, 631 [76 Cal.Rptr.2d 489, 957 P.2d 1323].) To maintain a private civil action for the breach of a mandatory duty, Janis must demonstrate, among other things, the statute was intended to protect against the type of harm suffered, and breach of the statute's mandatory duty was a proximate cause of the injury suffered. (*Washington* v. *County of Contra Costa* (1995) 38 Cal.App.4th 890, 896 [45 Cal.Rptr.2d 646].)

Janis cannot establish this claim. Government Code section 8880.24 was intended to protect against harm caused by false and misleading advertising of lottery games. Here, however, the harm was not caused by the advertising, but instead by the nature of the game itself. When Janis and other class members played Keno, it had not yet been declared "illegal." Thus, CSL's statements concerning the legality of the game were not misleading or false as a matter of law. Thus, the alleged harm suffered was caused by the selection of a game by the CSL commission, not the manner in which it was marketed. Section 8880.24 does not provide redress for this injury.

C. *Janis's Failure to Properly File an Administrative Claim Precludes Janis From Asserting a Violation of Government Code Section 8880.4.*

■ On Appeal, CSL argues Janis's Government Code section 8880.4 claim (section 8880.4 claim) fails as a matter of law because Janis did not timely file an appropriate government claim. We agree.

Pursuant to the Government Code, any party with a claim against a public entity must *first* present the claim to the entity; only if the governmental claim is denied or rejected may the claimant then institute civil litigation. (Gov. Code, § 945.4.) The purpose of this rule is to afford the public entity an opportunity to investigate the claim and determine the facts, as well as to settle the matter without incurring the expense of litigation. (*Wood* v. *Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1117-1118 [31 Cal.Rptr.2d 8].)

Here, Janis did not file the administrative claim asserting the section 8880.4 claim until *after* Janis filed its civil complaint, and accordingly, Janis cannot maintain the civil action.

Janis argues, however, the section 8880.4 claim is not a "new" government claim. Instead, contends Janis, it is an "Amended Government Claim" because it is factually related to the claims contained in the original government claim. Thus, as an amended claim, Janis concludes, it is proper and timely because it relates back to the original claim filed in June 1996, *before* Janis filed the civil action.

Government Code section 910.6, subdivision (a), provides: "A claim may be amended at any time before the expiration of the period designated in Section 911.2 or before final action thereon is taken by the board, whichever is later, if the claim as amended relates to the same transaction or occurrence which gave rise to the original claim. The amendment shall be considered a part of the original claim for all purposes."

Contrary to Janis's contention, the section 8880.4 claim does not qualify as an "amended claim" under Government Code section 910.6. The original government claim centered on the allegation CSL deceived and misled the public by promoting an illegal game. This allegation is unrelated to the claim CSL breached a duty to return 50 percent of Keno proceeds to the public as prizes. Janis's section 8880.4 claim, stands alone. It involves factual and legal issues separate and independent of the original claims and thus it does not constitute an amended claim.

Likewise, we are not persuaded by Janis's waiver argument. Janis argues CSL cannot assert this defense because the BOC failed to give notice of the insufficiency or rejection of Janis's claim under Government Code sections 911 and 911.3, subdivision (b).[5] We disagree. On March 31, 1997, the BOC informed Janis it could not take any action on the claim because Janis had initiated civil litigation and had failed to respond to BOC's July 1996 request for additional information concerning the original claim. In our view, the BOC's notice was appropriate under Government Code sections 911 and 911.3, subdivision (b). Thus, CSL did not waive its right to assert any defense.

D.  *Janis Is Not Entitled to an Accounting.*

Janis's sole remaining cause of action was for an accounting. A right to an accounting is derivative; it must be based on other claims. (*Union Bank* v.

---

[5]Section 911 provides, in pertinent part: "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by the failure to give notice of insufficiency with respect to such defect or omission . . . ." (Gov. Code, § 911.)

Section 911.3, subdivision (b) states, in relevant part: "Any defense as to the time limit for presenting a claim . . . is waived by failure to give the notice . . . within 45 days after the claim is presented . . . ." (Gov. Code, § 911.3, subd. (b).)

*Superior Court* (1995) 31 Cal.App.4th 573, 593-594 [37 Cal.Rptr.2d 653].) Here, because all of Janis's other claims fail, so too does the one for an accounting.

### DISPOSITION

The judgments are affirmed. Each party is to bear its own costs.

Johnson, J., and Woods, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 9, 1999.