Filed 11/15/21  Main Street Taxpayer Assn. v. Town of Mammoth Lakes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| MAIN STREET TAXPAYER ASSOCIATION, | C091546 |
| Plaintiff and Appellant, | (Super. Ct. No. CV190092 ) |
| v. | |
| TOWN OF MAMMOTH LAKES et al., | |
| Defendants and Respondents. | |

In this case we address the limitations for filing challenges to a business improvement district created pursuant to the Property and Business Improvement District Law of 1994 (the District Law).  (Sts. & Hy. Code, §§ 36600-36671.)[1]

The District Law "authorizes cities to establish property and business improvement districts (BID's) in order to levy assessments on real property for certain

---

[1]  Undesignated statutory references are to the Streets and Highway Code.

1

purposes." (*Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 865.) Among those purposes is "[m]arketing and economic development, including retail retention and recruitment." (§ 36606, subd. (d).) A petition may be adopted in whole or as revised by the city council; following a hearing held in conformance with the notice and protest and hearing provisions of Government Code sections 53753 and 54954.6. (§§ 36623-36625.) The BID's management plan may designate a private owner's association to implement the plan. (§§ 36651, 36612.) If the plan is implemented by an owner's association, the city retains control of the assessment proceeds through the terms of its contract with the owner's association. (§ 36622.) A new district shall last no more than five years (§ 36622, subd. (h)) but can be renewed following the creation of a new management plan (§ 36630). "The validity of an assessment levied under this part shall not be contested in an action or proceeding unless the action or proceeding is commenced within 30 days after the resolution levying the assessment is adopted pursuant to Section 36625." (§ 36633.)

In 2013, respondent, Town of Mammoth Lakes, formed such a district, the Mammoth Lakes Business and Improvement District (the District). Plaintiffs and appellants, Main Street Taxpayers Association, filed a class action complaint against the Town of Mammoth Lakes, the District and various other individuals and organizations, asserting numerous causes of action related to the formation of the District in 2013 and its renewal in 2018. The trial court sustained respondents' demurrers to the first amended complaint without leave to amend and dismissed the action as time-barred by section 36633's statute of limitations.

Appellant contends section 36633 does not bar its claims of corruption, unlawful behavior, and lack of jurisdiction, the continuous malfeasance it alleges has no limitation period, and trial courts have consistently ignored limitations periods as a bar to malfeasance claims. It also asserts the trial court had jurisdiction to rule on its claims and appellant had standing to raise them, it is entitled to a writ of mandate ordering the

District dissolved, and the District law must conform to the limitations on taxation in Propositions 26 and 218.

We find the gravamen of appellant's first 12 causes of action is an attack on the District's formation in 2013 or its renewal in 2018. Since the action was commenced more than 30 days after these two events, we conclude the trial court was correct in dismissing the action as time-barred. In so doing, we reject appellant's various attempts to find exceptions to section 36633. The gravamen of the thirteenth cause is the alleged invalidity of the transient occupancy tax from its 1986 inception, which is time-barred pursuant to the three-year limitation of Code of Civil Procedure section 338, subdivision (a). We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2013, respondent Town of Mammoth Lakes adopted the resolution forming the District, with an initial term of September 1, 2013 to August 31, 2016.[2] Assessments imposed are levied solely on the assessed tourism businesses, and the owner of the assessed business is solely responsible for payment of the assessment. If a business chose to collect the assessment from customers, it must identify the "MLTBID Assessment" in the bill. Prior to the District's expiration, it was renewed for a five-year term from September 1, 2018 to August 31, 2023. The owner's association administering the District is respondent Mammoth Lakes Tourism (ML Tourism). Respondent, John Urdi, is ML Tourism's Executive Director.

Appellant filed the action in this case on August 5, 2019. Following a meet and confer with respondents' counsel, appellant filed the first amended complaint that is the subject of this appeal on September 16, 2019. Appellant summarized the central issues of their complaint thusly: "(1) the fraudulent creation of a Tourism Business Independent

---

[2] Among the businesses sponsoring the petition was Mammoth Mountain Ski Area LLC., which was subsequently purchased by respondent Alterra Mountain Company, Inc.

3

District to cause new public fund money to be pilfered by the named Defendants for non-public purposes while these Defendants were holding financial conflicts of interest; and (2) the collection of transient occupant taxes by the Town of Mammoth Lakes without voter approval." The named defendants were respondents Rusty Gregory, Chief Executive Officer of defendant and respondent Mammoth Mountain Ski Area, Alterra Mountain Company, Inc., John Urdi, Chief Executive Officer of defendant ML Tourism, Town of Mountain Lakes, Michael Raimondo, a town council member who voted for the resolution creating the District, the Mammoth Lakes Chamber of Commerce, and Terri Stehlk, who allegedly conspired with the Mammoth Lakes Chamber of Commerce to create ML Tourism for the purposes of using a transient occupancy taxes public funds for the nonpublic purpose expenses of ML Tourism and the Mammoth Lakes Chamber of Commerce.

Appellant alleged Gregory "fraudulently used the protocol of a Tourism Business improvement District (TBID) to create new public fund money to be pilfered by named Defendants for non-public purposes while each identified Defendant was holding financial conflicts of interest" in violation of the Government Code section 1090, and that Urdi assisted him in the conspiracy. According to appellant, before July 24, 2013, Gregory and Urdi conspired to use the District Law to pay corporate expenses of the Mammoth Mountain Ski Area, the Mammoth Lakes Chamber of Commerce, and ML Tourism by funds collected through the District. The conspiracy was formed between 2010 and 2013, when Gregory represented to the local business community, a TBID plan to enhance marketing for the assessed businesses, when in fact it was no more than a scheme to increase the income of the Mammoth Lakes Ski Area by transferring the ski area's airline subsidy and marketing costs to funds assessed through the District.

According to appellant, marketing for the Town of Mammoth Lakes had been performed by city staff using transient occupancy tax funds enacted by "Measure A." After ML Tourism was created in 2010 by Stehlik, Town of Mammoth, the Mammoth

4

Lakes Chamber of Commerce, and Mammoth Mountain Ski area, the town's marketing department was fired and ML Tourism took over the marketing, funded with Measure A revenue. Appellant claimed the District was formed and the TBID assessment was imposed to avoid going to the voters for the approval of a tax.

Appellant alleged that the conspiracy was discovered within one year of the complaint's filing. At least one member of appellant's group has paid and is liable to pay the District's assessment. Appellant further alleges class action claims on behalf of it, its similarly situated consumers and property owners who have paid assessments levied by the District.

The First Amended Complaint set forth 13 causes of action.

The first cause of action alleged deceit and intentional fraud by Gregory and Urdi, alleging that Gregory planned to form a TBID to pay expenses of Mammoth Lakes Ski Area without having to go to the voters to impose a tax. During 2012, Gregory and Urdi falsely represented to businesses that the TBID plan would create new money that would provide a special benefit to the assessed businesses, and never disclosed Gregory's intended purpose of paying expenses of Mammoth Lakes Ski Area. The statements were a fraudulent inducement to obtain signatures for the TBID petition. This led to the formation of the District and ML Tourism, which annually receives $5 million in assessments and $2.5 million in Mammoth Lakes transient occupancy tax. Those funds are then spent to enrich certain entities, such as paying over $1 million for airline subsidies and $2 million for Mammoth Lakes Ski Area marketing. This fraud voided the 2013 resolution establishing the District and the 2018 resolution renewing it. Appellant claimed the $5 million annual assessment must be returned to the class.

The second cause of action was for conflict of interest in violation of Government Code section 1090 and the Political Reform Act of 1974 (Gov. Code, § 87100, et seq.), alleging Michael Raimondo, as a town council member, voted in favor of the resolution establishing the District while owning one of the businesses listed as having a special

privilege under the District's plan that was not given to other businesses. It also claimed the 2013 resolution establishing the District was void because it contained the association contract with ML Tourism, allowing Urdi to carry out the pilfering scheme of Gregory. It asserted that all public funds, whether assessments by the District or Measure A funds transferred to any defendant should be "imposed with a constructive trust" and then returned to the original payors of the assessment.

The third cause of action alleged violations of Government Code section 1090 and the Political Reform Act of 1974 with respect to the 2018 resolution renewing the District and alleging similar conflicts of interests as with the 2013 resolution.

The fourth cause of action asserted a conspiracy designed to avoid voter approval of a tax increase, alleging that during 2012 to 2013, Urdi, ML Tourism, Mammoth Mountain Ski Area, the Mammoth Lakes Chamber of Commerce, and the Town of Mammoth Lakes and others conspired to obtain additional public money through the District Law, thereby, increasing taxes while bypassing statutory and state constitutional requirements for voter approval of new taxes. It claimed all defendants were jointly and severally liable for all funds collected through the District assessments, which must be returned to the original payors.

The fifth cause of action alleged Alterra Mountain Company, Inc. was liable as a result of Gregory's fraud because Alterra Mountain Company, Inc. purchased Mammoth Mountain Ski Area, after determining Mammoth Mountain Ski Area was benefitting from the unlawful use of public funds for marketing and airline subsidies through ML Tourism, and Alterra Mountain Company, Inc. continued to accept these unlawful public funds after the purchase.

The sixth cause of action sought declaratory relief against all defendants seeking a determination that the 2013 petition initiating the District was fraudulently obtained and void, the resolutions establishing and renewing the District are void, all assessments by the District and transient occupancy taxes transferred to ML Tourism must be disgorged

6

and returned to payors, and that all transient occupancy taxes collected by the Town of Mammoth Lakes since its inception are void and must be returned to the original payors.

The seventh cause of action sought injunctive relief pursuant to Code of Civil Procedure section 526a, seeking an injunction ordering Town of Mammoth Lakes to deposit the District's assessments and all transient occupancy tax revenues into a general account fund that would not be disbursed to any defendant unless otherwise ordered by the trial court. The justification for the injunction was the improper transfer of public money as previously described in the complaint.

Appellant's eighth cause of action was for a writ of mandamus pursuant to Code of Civil Procedure section 1085 directing the Town of Mammoth Lakes to comply with Article XVI, section 6 of the California Constitution and cease the transfer of public money to ML Tourism. In support of this claim, appellant alleged a conspiracy amongst various respondents to outsource marketing from city employees to be a function of the Mammoth Lakes Chamber of Commerce, using the newly created ML Tourism as the vehicle to achieve this end. Appellant alleged the California Constitution gave no police powers to ML Tourism, and the contract between Town of Mammoth Lakes and Mammoth Lakes Tourism for marketing does not erase the prohibition against gifting public funds.

The ninth cause of action asserted the Town of Mountain Lakes lacked jurisdiction "to claim any validation to the town meeting." Appellant alleged the 2013 and 2018 resolutions establishing and renewing the District were void for failing to comply with the requirements of sections 36632 (by imposing the assessment on residentially zoned property), section 36624 (notice requirements) and section 36633 (failure of the 20189 resolution to contain an assessment formula).

Appellant's tenth cause of action cause was "Fraud Intended To Circumvent Propositions 128 and 26 Also Defeats The Resolutions Because They Are Simply

7

Unlawful." It claimed the 2013 and 2018 resolutions were void as they were intended to unlawfully circumvent the limitations on taxation in both propositions.

In the eleventh cause of action, appellant claimed the Town of Mammoth Lakes' elected officials violated their fiduciary duty to appellant's class, the general public, by unlawfully imposing taxes on appellant and those similarly situated, and transferring the fund to an entity, ML Tourism, the town did not control.

Appellant's twelfth cause of action requested imposition of a constructive trust on all public assets and moneys of all respondents, obliging each respondent to return the funds with interest to a common fund managed by appellant as determined by the trial court.

The thirteenth and last cause of action was a separate class action challenging the transient occupancy tax, claiming it was collected without voter approval through vague and ambiguous ballot measures designed to deceive voters, as well as resolutions and ordinance that violate statutory and state constitutional provisions. According to appellant, when the initial transient occupancy tax, Measure A, was adopted on August 6, 1986, government officials failed to comply with Government Code section 53724's requirements regarding submitting local taxes to voters, failure to submit this Measure to voters by November 15, 1988 rendered it void under Government Code section 53727, and subsequent measures ratifying or amending the transient occupancy tax were void for failing to comply with Government Code section 53724 or variances between the proposed ordinance and the ballot language. Appellant sought certification of the class claiming fraud and conflicts of interest causing the imposition of the District's assessment and challenging the transient occupancy tax.

Respondents demurred on several grounds, including the statute of limitations. At the hearing on the demurrers, the trial court offered a tentative ruling that the action was time-barred under section 36633's 30-day statute of limitations. The trial court offered appellant the opportunity to amend the first cause of action to allow it to allege a

8

timely tort not barred by section 36633, but appellant declined. The trial court sustained the demurrers without leave to amend and entered a judgment of dismissal.

DISCUSSION

I

*Causes of Action One Through Twelve*

Appellant contends the trial court erred in granting the demurrer and ordering the dismissal based on section 36633's statute of limitations due to the nature of the claims it raises. It finds the trial court erred by failing to recognize the gravamen of the complaint determines the relevant limitation period, and the gravamen here is "does a local government agency act within the authority of laws when adopting a resolution or contract created for unlawful purposes? If not, what are the consequences?" According to appellant, the claims of corruption and unlawful behavior in the first amended complaint are exempt from the 30-day limitation period because they address the government's authority to act. These claims address the town's jurisdiction to act, exempting them from the statute of limitations.

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' [Citation.]" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23.) Thus, "[w]hat is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct. [Citation.]" (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207.)

The gravamen of the first twelve causes of action is manifest. Each of the first twelve causes of action centers on the alleged illegality of the District's creation in 2013

9

and its renewal in 2018.[3]  The allegations of fraud center on the petition establishing the District and resolutions enacting and renewing it, while the conflict of interest allegations center on who receives the benefits of the assessment.  The allegations in all of these twelve causes of action in the end center on the District's formation, its legality, and how it operates.

Such claims are governed by section 36633, which prevents the "validity of an assessment levied under this part" from being "contested in an action or proceeding unless the action or proceeding is commenced within 30 days after the resolution levying the assessment is adopted pursuant to Section 36625."  In the one published case addressing section 36633, the Fourth District Court of Appeal held that its 30-day limit for filing a notice of appeal for an action challenging an assessment[4] applied to bar an untimely appeal of the dismissal of an action contending an assessment was an invalid tax not approved by the voters, as required by article XIII C of the California Constitution.[5] (*The Inland Oversight Committee v. City of Ontario* (2015) 240 Cal.App.4th 1140, 1142-1143, 1145.)  The appellant claimed its action was not subject to the 30-day limitation because it "did not allege that the assessments were invalid because the City failed to comply with the District Law (§§ 36600-36671), but because the assessments were a general or a special 'tax' not approved by the cities' voters pursuant to article XIII C of

---

[3]  Since we are holding these causes are time-barred, we do not address other potential problems with these causes, like the sixth and seventh causes of action for declaratory and injunctive relief being remedies rather than causes of action.  (See *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159 [injunctive relief is a remedy, not a cause of action].)

[4]  "An appeal from a final judgment in an action or proceeding shall be perfected within 30 days after the entry of judgment."  (§ 36633.)

[5]  (Cal. Const., art. XIII C, §§ 1, subd. (e), par. (2), 2, subds. (b)) [majority voter approval required for general taxes], (d) [supermajority voter approval required for special taxes].

the California Constitution." (*The Inland Oversight Committee*, at p. 1145.) Finding "the basis of its invalidity claim is immaterial to the application of section 36633," the Fourth District Court of Appeal concluded, "[t]he 30-day time limits of section 36633 apply to 'any action' challenging '[t]he validity' of an assessment levied pursuant to the District Law, regardless of the basis of the validity challenge," and "it is the gravamen of the complaint (here, that the assessments were invalid), rather than the form of the action or the specific relief demanded, that determines the applicable limitations period. [Citations.]" (*Ibid*.)

The same applies here. Although section 36633 has since been amended to prohibit "an action" rather than "any action" filed after the 30-day period, this is a distinction without a difference in the application of the 30-day limitation period. Whether the statute refers to "an action" or "any action" the result is the same, actions challenging an assessment under the District law filed more than 30 days after its enactment are time-barred without regard to the basis of the claim or claims asserted. Since the action was filed more than 30 days after the District was adopted in 2013 and renewed in 2018, the first 12 causes of actions were time-barred under section 36633.

II

*Thirteenth Cause of Action*

The thirteenth cause of action, while relying in part on the alleged invalidity of the District, also challenges Town of Mammoth Lakes' transient occupancy tax, a matter not governed by section 36633.

As appellant acknowledges, the statute of limitations for its claims against the transient occupancy tax is three years, as appellant asserts the tax violates various provisions of the Government Code. (Code Civ. Proc. § 338, subd. (a) [three-year limitation period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture"].) Accordingly, a statutory challenge to a tax is limited to challenges to those taxes paid within three years of the action; a timely action regarding those taxes

11

does not relate back to taxes paid earlier. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 821-822, 825 (*Howard Jarvis Taxpayers Assn.*) Appellant's argument under the common law theory of continuous accrual (see *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1199 ['[t]he common law theory of continuous accrual posits that a cause of action challenging a recurring wrong may accrue not once but each time a new wrong is committed"]) does not allow appellant to go back further. The thirteenth cause of action challenges 15 separate legislative acts regarding the transient occupancy tax over a period of 27 years. Each of the legislative acts challenged in the thirteenth cause of action are independent acts that stand or fall on their own merits. Thus, appellant challenges a series of discrete, independent legislative acts in enacting an amending the measure, rather than a single continuous wrong. Any claim for taxes paid more than three years before the action is time-barred.

The thirteenth cause of action sought invalidation of the transient occupancy tax from its inception, with a return of all funds collected. As the tax was first enacted in 1986, this claim reaches much further back than three years from the filing of the complaint, hence it is time-barred. In *Howard Jarvis Taxpayers Assn.*, the Supreme Court limited "injuries occurring in the statutory three-year period before suit is brought" and "only to plaintiffs injured by tax collections within the three-year period." (*Howard Jarvis Taxpayers Assn., supra,* 25 Cal.4th at p. 825.)

The gravamen of the thirteenth cause is that the transient occupancy tax has been invalid since its inception in 1986, requiring a full refund of all transient occupancy taxes ever paid. Appellant disclaimed the trial court's invitation to amend its complaint as to the first cause of action, and raises no claim on appeal regarding amending any part of its complaint. Accordingly, any contention that leave should have been given to amend the thirteenth cause of action to conform with the three-year limit is forfeited. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091, abrogated on another point by *Martinez v. Combs* (2010) 49 Cal.4th 35, 62-66 [failure to ask for leave to amend forfeits such claim on

appeal]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 [failure to raise contention in opening brief forfeits claim on appeal].)  Although the thirteenth cause of action also sought declaratory relief that the occupancy tax was invalid because it was never approved by the voters and mandamus directing the Town of Mammoth Lakes not to collect it, this does not change the central focus of the cause, which was that the tax has been invalid since its inception.  As appellant never sought leave to amend this complaint to address only the last three years of the tax, the trial court correctly granted the demurrer on this cause and dismissed the complaint without leave to amend.

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____\s\_____,
BLEASE, Acting P. J.


We concur:


_____\s\_____,
HULL, J.


_____\s\_____,
KRAUSE, J.